IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| CHRYSTINA J. MCCLOUD O/B/O K.A.M., </br></br>      Plaintiff, </br></br> v. </br></br> MICHAEL J. ASTRUE, COMMISSIONER, SOCIAL SECURITY ADMINISTRATION, </br></br>      Defendant. | ) ) ) ) ) ) ) Case No.:   2:10-CV-2798-VEH ) ) ) ) ) ) ) |

_____

**MEMORANDUM OPINION**

This action was originally filed by Chrystina J. McCloud ("Ms. McCloud") on behalf of her minor son, K.A.M.,[1] pursuant to Title XVI of the Social Security Act. Ms. McCloud seeks review of a final adverse decision of the Commissioner of the Social Security Administration ("Commissioner" or "Secretary"), which denied her son's application for childhood Supplemental Security Income ("SSI") benefits. Ms. McCloud timely pursued and exhausted her administrative remedies available before the Commissioner. The case is ripe for review pursuant to 42 U.S.C § 405(g) of the

---

[1] The legal standards in this opinion only apply to K.A.M. and his impairments. *See Stanton v. Astrue*, 482 F. Supp. 2d 1318, 1320 (N.D. Ala. 2007).

Social Security Act.[2]

## FACTUAL AND PROCEDURAL HISTORY

K.A.M. was a 3-year-old male at the time of the 2009 hearing before the administrative law judge ("ALJ"). (Tr. 18, 27). Ms. McCloud claims that K.A.M. became disabled on June 1, 2006, due to asthma. (Tr. 81).

Ms. McCloud filed an application for childhood SSI benefits on June 7, 2007. (Tr. 45). The claim was denied by the Commissioner on September 12, 2007. *Id.* Ms. McCloud filed a timely written request for a hearing on October 19, 2007, and the hearing was held on June 2, 2009. (Tr. 50, 27). The ALJ concluded that K.A.M. was not disabled and denied his application on August 11, 2009. (Tr. 26). Ms. McCloud timely requested a review of the ALJ's decision on August 25, 2009. (Tr. 7-11). The Appeals Council denied Ms. McCloud's request for review on August 16, 2010, thus making the ALJ's decision the final decision of the Commissioner. (Tr. 1). Ms. McCloud filed a complaint with this court on October 18, 2010. (Doc. 1).

## STANDARD OF REVIEW

The function of this court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal

---

[2] 42 U.S.C. § 1383(c)(3) renders the judicial review provisions of 42 U.S.C. § 405(g) fully applicable to claims for SSI.

standards were applied. *Richardson v. Perales,* 402 U.S. 389, 390 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). This court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). This court will determine that the ALJ's opinion is supported by substantial evidence if it finds "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* Substantial evidence is "more than a scintilla, but less than a preponderance." *Id.*

## STATUTORY AND REGULATORY FRAMEWORK

To qualify for SSI benefits an individual under age 18, defined as a child under the Social Security Act, must be disabled as defined by the Social Security Act and the Regulations promulgated thereunder.[3] *See* 20 C.F.R. § 416.906. The law defines children's "disability" as "a medically determinable physical or mental impairment or combination of impairments that causes marked and severe functional limitations, and that can be expected to cause death or that has lasted or can be expected to last for a continuous period of not less than 12 months." *Id.*

In determining whether a child is disabled, the Regulations provide a three-step

---

[3] The "Regulations" promulgated under the Social Security Act are listed in 20 C.F.R. Parts 400 to 499, as current through June 16, 2011.

process. 20 C.F.R. § 416.924(a). The Commissioner must determine in sequence: (1) whether the child is engaged in substantial gainful activity, (2) whether the child has an impairment or combination of impairments that is severe; and (3) whether the child has an impairment that meets, medically equals, or functionally equals the Listing of Impairments. *Id.*; *see also Henry v. Barnhart*, 156 Fed. Appx. 171, 173 (11th Cir. 2005) (citing 20 C.F.R. § 416.924(a); *Wilson v. Apfel*, 179 F.3d 1276, 1277 n.1 (11th Cir.1999)). A medically determinable impairment "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 416.908. Further, the impairment "must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [a claimant's] statement of symptoms." *Id.*

Functional equivalence is found if the child's impairment or combination of impairments results "in 'marked'[4] limitations in two domains of functioning or an 'extreme'[5] limitation in one domain . . ." 20 C.F.R. §416.926a(a). In order to

---

[4] A "marked" limitation in a domain is found when a child's impairment(s) seriously interfere with the ability to independently initiate, sustain, or complete activities. 20 C.F.R. § 416.926a(e)(2)(i).

[5] An "extreme" limitation in a domain is found when a child's impairment(s) very seriously interfere with the ability to independently initiate, sustain, or complete activities. 20 C.F.R. § 416.926a(e)(3)(i).

determine whether a child's status functionally equals the criteria for an impairment listed in the Regulations, the ALJ must consider functionality in terms of six domains: "(i) Acquiring and using information; (ii) Attending and completing tasks; (iii) Interacting and relating with others; (iv) Moving about and manipulating objects; (v) Caring for yourself; and (vi) Health and physical well-being." 20 C.F.R. § 416.926a(b)(1)(i-vi). If the impairment(s) does not satisfy the duration requirements, or does not meet, medically equal, or functionally equal one of the Listings in the Regulations, a finding of not disabled will be reached and the claim will be denied. *See* 20 C.F.R. § 416.924(d)(2).

## FINDINGS OF THE ADMINISTRATIVE LAW JUDGE

Under step one of the three-part test for determining childhood disability, the ALJ found that K.A.M. had not engaged in any substantial gainful activity. (Tr. 18). Under step two, the ALJ found that K.A.M. has a severe impairment in the form of reactive airway disease ("Asthma"). *Id.*

The ALJ then concluded that K.A.M. did not have an impairment or combination of impairments that meets, medically equals, or functionally equals one of the listed impairments. *Id.* Additionally, the ALJ determined that K.A.M. did not have an impairment or combination of impairments that functionally equals the Listings. *Id.* Based on these findings, the ALJ concluded that K.A.M. had not been

disabled since June 7, 2007, the date on which his application was filed. (Tr. 26).

## ANALYSIS

This court is limited in its review of the Commissioner's decision in that the Commissioner's findings of fact must be reviewed with deference. *See Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990) (citing *Graham v. Bowen*, 790 F.2d 1572, 1574-75 (11th Cir. 1986)). In contrast to factual findings, however, the Commissioner's conclusions of law are subject to an "exacting examination" or *de novo* review. *See id.* ("The Secretary's failure to apply the correct legal standards or to provide the reviewing court with sufficient basis for a determination that proper legal principles have been followed mandates reversal.") (citations omitted). In particular, this court has a *"*<u>responsibility to scrutinize the record in its entirety</u> to ascertain whether substantial evidence supports each essential administrative finding." *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) (emphasis added).

Ms. McCloud asserts that the decision of the Commissioner is not supported by substantial evidence, and requests that the decision be reversed with the instruction to award benefits or remanded for further consideration. (Doc. 9 at 2, 12). More specifically, Ms. McCloud argues that the ALJ erred by concluding that K.A.M.'s impairment or combination of impairments did not meet or medically equal the requirements of Listings 103.02 (Chronic Pulmonary Insufficiency) or 103.03

(Asthma). (*Id.* at 9, 11). In its review, this court finds that the ALJ has committed reversible error as to whether K.A.M.'s asthma meets Listing 103.03(B).[6]

### **THE ALJ'S DETERMINATION THAT K.A.M. DOES NOT MEET THE REQUIREMENTS OF LISTING 103.03(B) IS NOT SUPPORTED BY SUBSTANTIAL EVIDENCE.**

In order to meet the requirements of a Listing, "a claimant must have a diagnosis included in the Listings and must provide medical reports documenting that the conditions meet the specific criteria of the Listings and the duration requirement." *Wilson*, 284 F.3d at 1224. Furthermore, mere diagnosis of an impairment without "corroborative medical evidence supported by clinical and laboratory findings" is insufficient to meet the requirements of a Listing. *Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991) (citing 20 C.F.R. §§ 416.925, 416.926).

The ALJ determined that K.A.M.'s asthma does not meet the requirements of Listing 103.03 concerning asthma. (Tr. 19). To meet the requirements of Listing 103.03(B), a claimant must have asthma with:

> B.   Attacks (as defined in 3.00C), in spite of prescribed treatment and requiring physician intervention, occurring at least once every 2 months or at least six times a year. Each inpatient hospitalization for longer than 24 hours for control of asthma counts as two attacks, and an evaluation period of at least 12 consecutive months must be used to determine the frequency of attacks . . .

---

[6] As a result, the court will not discuss the merits of other issues presented on appeal.

20 C.F.R. Part 404, Subpt. P, App. 1, § 103.03(B). For purposes of Listing 103.03(B), "attacks" are defined as follows:

> [P]rolonged symptomatic episodes lasting one or more days and requiring intensive treatment, such as intravenous bronchodilator or antibiotic administration or prolonged inhalational bronchodilator therapy in a hospital, emergency room or equivalent setting. Hospital admissions are defined as inpatient hospitalizations for longer than 24 hours.

20 C.F.R. Part 404, Subpt. P, App. 1, § 3.00(C).

In order to determine whether K.A.M.'s asthma meets the requirements of Listing 103.03(B), it is necessary to determine the dates on which K.A.M. experienced attacks, as defined in § 3.00(C). To qualify as an attack, there must (1) a prolonged symptomatic episode lasting twenty-four hours or more; and (2) that episode must require intensive treatment in a hospital, emergency room, or equivalent setting. *See id.* Based on the plain meaning[7] of the statute, the question of whether a particular episode meets the durational requirements of § 3.00(C) depends upon the duration of the symptoms rather than the length of time required to treat such symptoms. *See Alcorta v. Barnhart*, No. SA-02-CA-0472 OG (NN), 2006 WL 3827003, at *9 (W.D. Tex. Dec. 28, 2006) (stating that the wrong legal standard was

---

[7] When addressing the plain meaning canon of statutory construction, the Supreme Court has consistently stated that "courts must presume that a legislature says in a statute what it means and means in a statute what it says there." *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253-54 (1992).

8

applied where it was unclear from the ALJ's decision whether the ALJ "considered the length of each asthma episode [the correct standard] or the length of the time that plaintiff received treatment in the doctor's office in determining whether plaintiff's asthma exacerbation met the durational length required by the listing."); *Lozano ex rel. Lozano v. Apfel*, No. 97 Civ. 5925 MBM, 2000 WL 1738401, at *9 (S.D.N.Y. Nov. 22, 2000) ("The regulation requires that treatment be administered in a hospital, emergency room, or equivalent setting, not that the symptoms persist for 24 hours in such a setting.").

The medical record reveals a number of clinic visits, emergency room visits, and hospital admissions spanning the course of approximately three and a half years. Application of the definitional requirements of § 3.00(C) to each visit reveals a total of five dates on which attacks potentially occurred.

### A.    Section 3.00(C) Attacks[8]

On October 15, 2008, K.A.M. was admitted to CHS for wheezing and asthma exacerbation.[9] (Tr. 237-39). During this admission, K.A.M. received multiple

---

[8] The hospital admission on June 26, 2006, is omitted from this discussion because it did not occur within twelve months of any other attack.

[9] For purposes of his brief, the Commissioner assumes that the hospitalization on October 15, 2008, constitutes a § 3.00(C) attack. (Doc. 10 at 12, 14).

inhalation bronchodilator and steroid treatments. *Id.* However, the record does not reflect the duration of this admission, and the ALJ failed to provide any analysis as to whether this admission constitutes an attack. It is unclear whether the hospitalization lasted longer than twenty-four hours, and thus constituted two attacks. *See* 20 C.F.R. Part 404, Subpt. P, App. 1, § 103.03(B). As discussed below, if this hospitalization counts as two attacks, then K.A.M. may meet the frequency requirement of Listing 103.03(B).

On January 14, 2009, K.A.M. presented to the CHS emergency room with a chief complaint of wheezing. (Tr. 220-36). Treatment notes indicate that K.A.M. was experiencing mild respiratory distress, coarse wheezing, and increased work of breathing. (Tr. 229-30). Over the course of approximately three and half hours, one dose of steroids and three nebulizer treatments of Albuterol (long) 10 mg[10] were administered. *Id.* The treatment notes indicate that K.A.M.'s symptoms started five days earlier. (Tr. 222). Based on the language of § 3.00(C), this visit constitutes a "prolonged symptomatic episode," because the symptoms lasted longer than twenty-four hours. Additionally, the fact that three albuterol nebulizer treatments and one dose of steroids were administered could be evidence of intensive treatment. Because

---

[10] The total duration of the nebulizer treatments was two hours and forty-eight minutes. (Tr. 233-34).

the examples of "intensive treatment" in § 3.00(C) are illustrative, a reasonable person could conclude that such treatment is intensive, especially if the albuterol treatment constitutes "prolonged inhalational bronchodilator therapy." 20 C.F.R. Part 404, Subpt. P, App. 1, § 3.00(C). However, the ALJ's decision contains no information about the treatment that occurred during this visit, and generally fails to address whether this visit qualifies as an attack. Therefore, on remand, the ALJ should address whether such treatment is extensive within the meaning of § 3.00(C).

On March 9, 2009,[11] K.A.M. presented to the CHS emergency room for wheezing that started two days earlier. (Tr. 208-19). The treatment records reveal wheezing throughout all lung fields, decreased breath sounds, and increased work of breathing (Tr. 210-15). During this visit, ibuprofen, nebulizer treatments of Albuterol (long) 10 mg,[12] and oral and injected steroids were administered. (Tr. 218). The Commissioner argues that this visit does not constitute an attack because K.A.M.

---

[11] K.A.M. was discharged at 1:51 a.m. on March 10, 2009. (Tr. 218). K.A.M. returned to the hospital on March 10, 2009, and was eventually admitted. (Tr. 202-07). It is unclear whether the visits on March 9, 2009, and March 10, 2009, are part of the same period of continuous treatment, because upon discharge from the visit that began on March 9, 2009, K.A.M.'s condition was significantly improved. (Tr. 219). Therefore, this issue should be further developed on remand.

[12] The total duration of the nebulizer treatment was one hour and twenty-seven minutes. (Tr. 218).

was discharged after a period of four hours. (Doc. 10 at 15). However, the Commissioner mistakenly applied the wrong standard for § 3.00(C), focusing on the duration of the treatment rather than the duration of the symptomatic episode. Because K.A.M.'s symptoms started two days earlier, this constitutes a "prolonged symptomatic episode." 20 C.F.R. Part 404, Subpt. P, App. 1, § 3.00(C). Additionally, the fact that K.A.M. received inhalation bronchodilator and steroid treatment could be further evidence that this visit qualifies as an attack. In the Notice of Decision, the ALJ failed to address this visit. Consequently, this court is unable to determine whether the ALJ considered this visit an attack when he determined that K.A.M.'s asthma did not meet Listing 103.03(B).

On March 10, 2009, K.A.M. was admitted to CHS with complaints of respiratory distress and received a diagnosis of status asthmaticus. (Tr. 197-202). This admission lasted approximately five days and involved antibiotic, bronchodilator, and steroid treatment. *Id.* As such, one could reasonably conclude that this visit qualifies as an attack based on the duration of the symptoms and the intensity of treatment. However, the ALJ failed to discuss whether this visit qualifies as an attack.

### B.   K.A.M's Asthma Potentially Meets Listing 103.03(B)

Having determined that K.A.M. experienced seven potential attacks, it is now

necessary to determine whether such attacks meet the frequency requirement of Listing 103.03(B). Listing 103.03(B) requires that attacks occur "at least once every 2 months or at least six times a year." 20 C.F.R. Part 404, Subpt. P, App. 1, § 103.03(B). Each inpatient hospitalization lasting longer than twenty-four hours equals two attacks. *Id.*

If the October 15, 2008, hospital admission lasted longer than twenty-four hours, it counts as two attacks. *See* 20 C.F.R. Part 404, Subpt. P, App. 1, § 103.03(B). Furthermore, if the treatment K.A.M. received during the emergency room visits on January 14, 2009, and March 9, 2009, is considered intensive, then each visit counts as one attack. When these four attacks are combined with the five-day admission on March 10, 2009 (which counts as two attacks), there is the potential for six attacks within the five-month period of October 15, 2008, to March 15, 2009, thus satisfying the frequency requirement of at least six attacks in a twelve month period. 20 C.F.R. Part 404, Subpt. P, App. 1, § 103.03(B). However, the ALJ provided no explanation as to whether K.A.M.'s visits qualify as attacks, and provided no reasoning for his determination that K.A.M.'s asthma does not meet Listing 103.03(B).

Because the record does not indicate the duration of the hospital admission on October 15, 2008, this court is unable to determine whether the ALJ properly applied

the correct standard for determining attacks under § 3.00(C). As such, the ALJ's determination that K.A.M.'s asthma does not meet Listing 103.03(B) is not supported by substantial evidence. Because a hearing in a Social Security matter is non-adversarial in nature, "the ALJ has a basic duty to develop a full and fair record," regardless of whether or not the claimant is represented. *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003); *see Brown v. Shalala*, 44 F.3d 931, 934-35 (11th Cir. 1995). It is evident that the ALJ failed to fulfill this obligation, because the record does not indicate the duration of the hospital admission on October 15, 2008, a fact that is critical to the ALJ's determination of whether K.A.M.'s asthma meets Listing 103.03(B).

The ALJ further erred by failing to consider the emergency room visit on March 9, 2009, and failing to articulate his rationale for concluding that K.A.M.'s asthma does not meet Listing 103.03(B). This essentially requires this court to speculate as to the ALJ's reasoning, thus hindering the ability "to conduct a review that is both limited and meaningful." *Owens v. Heckler*, 748 F.2d 1511, 1514-15 (11th Cir. 1984). While it is possible that the ALJ's decision is correct, this court declines to affirm "simply because some rationale might have supported the ALJ's conclusion." *Id.* at 1516.

## CONCLUSION

Based upon the court's evaluation of the evidence in the record and the submissions of the parties, the court finds that the Commissioner's final decision is not supported by substantial evidence. More specifically, the ALJ failed to develop the record with regard to the duration of the hospital admission on October 15, 2008, failed to consider the emergency room visit on March 9, 2009, in the Notice of Decision, and failed to adequately explain his reasoning when he concluded that K.A.M.'s asthma does not meet Listing 103.03(B). Accordingly, the decision of the Commissioner is due to be reversed and remanded for further development of the record and reconsideration of whether K.A.M.'s asthma meets the requirements of Listing 103.03(B) as more specifically set out in this Memorandum Decision.

**DONE** and **ORDERED** this the 28th day of June, 2011.

**VIRGINIA EMERSON HOPKINS**
United States District Judge